**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JOHN WAYNE SORRELL,**

    **Plaintiff,**

**vs.**                                          **CIVIL ACTION NO. 2:17-CV-03689**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security which denied the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered July 24, 2017 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-briefs in support of judgment on the pleadings. (Document Nos. 13 and 14.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 13.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 14.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, John Wayne Sorrell (hereinafter referred to as "Claimant"), protectively filed

his application for Title XVI benefits on August 8, 2013, alleging disability since July 16, 2013 due to his "back and lungs."[1] (Tr. at 187-195, 207, 222.) His claim was initially denied on December 19, 2013 (Tr. at 77-87.) and again upon reconsideration on February 21, 2014. (Tr. at 91-97.) Thereafter, Claimant filed a written request for hearing on April 21, 2014. (Tr. at 98-100.)

The first administrative hearing was held on August 13, 2015 before the Honorable Valeria A. Bawolek, Administrative Law Judge ("ALJ"); because the medical record needed to be augmented, another hearing was scheduled afterwards. (Tr. at 27-35.) A supplemental administrative hearing was held on January 4, 2016. (Tr. at 36-52.) On February 22, 2016, the ALJ entered an unfavorable decision. (Tr. at 8-26.) On March 21, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 184-186.) The ALJ's decision became the final decision of the Commissioner on May 25, 2017 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7.)

On July 23, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 10 and 11.) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (Document No. 13.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 14.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was born on June 29, 1968, and considered a "younger person" throughout these proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 19.) Claimant graduated high school. (Tr. at 19,

---

[1] In his Disability Report – Appeal, submitted on April 21, 2014, Claimant asserted that his back and breathing issues had worsened. (Tr. at 250.)

223.) Claimant was last employed at Wal-Mart for a couple of months as a janitor. (Tr. at 49.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**<u>Summary of ALJ's Decision</u>**

The ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since August 8, 2013, the application filing date. (Tr. at 13, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: degenerative disc disease; degenerative joint disease; and chronic obstructive pulmonary disease (COPD). (Id., Finding No. 2.) At the third inquiry, the ALJ concluded that the severity of Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 3.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform sedentary work except

> he cannot climb ladders, ropes, or scaffolds and cannot kneel or crawl as part of a job. He can only occasionally balance, stoop, crouch, and climb ramps and stairs. He can tolerate only occasional exposure to heat, cold, vibration, and pulmonary irritants. He must avoid all hazards including unprotected heights and dangerous machinery.

(Id., Finding No. 4.)

At step four, the ALJ found that Claimant was incapable of performing his past relevant work. (Tr. at 19, Finding No. 5.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (Id., Finding Nos. 6-9.) Finally, the ALJ determined Claimant had not been under a disability from August 8, 2013 through the date of the decision. (Tr. at 21, Finding No. 10.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts one main ground in support of his appeal: the ALJ failed to perform an adequate step three analysis regarding Claimant's lumbar spine degenerative disc disease to see if it met or equaled Listing 1.04A criteria, in contravention to the holding in Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013). (Document No. 13 at 10-11.) Claimant states that the ALJ contradicted her own third step finding with her summary of the probative evidence that showed Claimant had lumbar spinal stenosis though she failed to compare this with Listing 1.04 criteria. (Id. at 12.) Because the ALJ failed to abide by Fourth Circuit jurisprudence to explain how she found Claimant did not medically equal or meet the Listing, this Court is unable to determine the ALJ's analysis process or what evidence the ALJ considered in making her step three finding. (Id. at 12-13.)

Claimant asks this Court to reverse the final decision for an award of benefits, or to remand in order that the Commissioner may correct this error. (Id. at 13.)

In response, the Commissioner argues that Claimant did not prove he met the criteria of Listing 1.04A at step three of the sequential evaluation process because the evidence of record did not indicate he met all criteria, which is required under law, the Radford decision notwithstanding. (Document No. 14 at 5-6.) The Commissioner further argues that numerous districts in the Fourth Circuit, including this one, have found that if an ALJ discusses the evidence elsewhere in the decision that supported the conclusion that a claimant's impairment does not meet Listing criteria requirements, then there is no need to remand the case. (Id. at 7-8, 9.) In this case, the ALJ discussed the relevant evidence supporting her finding, and correctly found that the evidence did not support a determination that Claimant's impairment met or equaled Listing 1.04A. (Id. at 8-12.) Finally, the Commissioner argues that the ALJ did not contradict her step three analysis, and

her decision is supported by substantial evidence. (Id. at 12.)

The Commissioner asks this Court to affirm her final decision that Claimant was not disabled. (Id. at 13.)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Medical Records Related to Listing 1.04A Criteria:

The administrative record documents Claimant's back and leg complaints to a certified physician's assistant in the office of his primary care physician, Whitney Boggs, M.D., beginning in March 2014. (Tr. at 405.) At that time, Claimant complained of chronic low back pain and indicated he had been involved in an ATV accident many years ago resulting in broken ribs and a punctured lung. (Id.) He additionally complained of "Charlie horses" in his hands and feet. (Id.) Subsequently, on June 17, 2014, Claimant returned with complaints of constant low back pain and stated that his right leg was tingling. (Tr. at 445.) He explained that when crossing his right leg over his left, he experienced a burning sensation. (Id.) Dr. Boggs observed Claimant to have positive straight leg raise testing and to walk with an antalgic gait. (Tr. at 446.) X-rays of the lumbar spine confirmed narrow posterior disc spaces from L4 to S1 as well as anterior degenerative lipping of the lower lumbar vertebrae. (Tr. at 411.)

On November 6, 2014, Claimant presented to the emergency room complaining of sharp and continuous back and right leg pain. (Tr. at 388-392.) He was noted to have spasm, stiffness, and tenderness and was only able to bear partial weight. (Tr. at 390.) Claimant explained that his

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

pain was alleviated when he remained still but worsened with movement, weight bearing, or bending his knee. (Id.) He was observed to have a decreased range of motion with pain in his back that radiated to his right lower extremity but negative straight leg raise testing. (Tr. at 390, 391.) A CT scan of the lumbar spine revealed possible central disk protrusions at L3-4 and L4-5 with mild disk bulging at the L5-S1 level. (Tr. at 394.)

On November 11, 2014, Claimant returned to Dr. Boggs, indicating he was doing better but still having severe back pain. (Tr. at 397.) Dr. Boggs observed Claimant to have difficulty sitting more than one or two minutes at a time as well as thoracolumbar spine pain caused by motion. (Tr. at 397-398.) Dr. Boggs discontinued hydrocodone, recommended physical therapy, and ordered an MRI. (Tr. at 398.) The lumbar MRI, dated November 19, 2014, confirmed degenerative disk and facet disease with a Grade 1 spondylolithesis, central spinal canal stenosis, bilateral foraminal stenosis. (Tr. at 459-460, 490.) Thereafter, Claimant continued to complain of worsening back pain radiating down his legs with occasional paresthesia. (Tr. at 419-420.) Dr. Boggs prescribed Mobic, increased the dosage of Neurontin, continued Flexeril, and referred Claimant to a neurosurgeon. (Tr. at 420.)

By February 2015, Claimant reported he was doing well on his medications but still suffered from back and left leg pain with occasional parathesia of the right knee and calf and numbness in his toes. (Tr. at 423-424.) He stated he was working on the home exercises and stretching at home. (Tr. at 424.) However, in April 2015, Claimant experienced a setback with increasing lower back and bilateral buttock pain. (Tr. at 421-422.)

On April 8, 2015, Claimant underwent a neurological examination with Rida Mazagri, M.D. (Tr. at 425-426.) Dr. Mazagri believed Claimant's condition to be stable at that point and

recommended physiotherapy and a trial of Norco and a Medrol dosepak. (Id.) The following month, Claimant returned to Dr. Mazagri, who observed Claimant to walk with a mild limp favoring his right leg and to have positive straight leg raise at 80 degrees on the right. (Tr. at 430-431.) Dr. Mazagri discussed the surgical option where Claimant had synovial cyst, as well as canal stenosis, 4-5, and Claimant preferred to give it more time. (Tr. at 430.)

In June 2015, Dr. Boggs noted that Claimant was very anxious about having spinal surgery. (Tr. at 432-433.) Additionally, she indicated he had a poor range of motion in his back and walked with a limp. (Tr. at 433.) By July 2015, Dr. Mazagri recommended a posterior lumbar laminectomy, left recess decompression and foraminotomy, removal of a synovial cyst, and fusion for spondylolisthesis. (Tr. at 490.)

On September 9, 2015, Dr. Mazagri noted Claimant to walk with a limp favoring his right leg; he noted Claimant could move both lower extremities well with good strength, with intact sensation with positive straight leg raising on the right at 80 degrees. (Tr. at 486.) After discussing different options, risks, benefits and alternatives, Claimant agreed to proceed with surgery. (Tr. at 487.)

Physical Consultative Examination:

On September 29, 2015, Claimant was evaluated by Irene Wasylyk, M.D. at the ALJ's request. (Tr. at 468-479.) Dr. Wasylyk observed Claimant to have a reduced range of motion in his left shoulder. (Tr. at 470.) She noted intact strength of the upper extremities. (Id.) His sitting straight leg test was negative, and supine straight leg test at 45 degrees on the left caused pain and radiated at 40 degrees on the right. (Id.) Claimant also demonstrated reduced motor strength, sensation, and reflexes of the lower extremities. (Id.) Dr. Wasylyk noted Claimant could walk on

heels and toes, "but very slowly", and he required no assistive devices for ambulation. (Id.) Dr. Wasylyk's impressions included, *inter alia*, low back pain with bilateral lower extremity radiculopathy and positive supine straight leg test, chronic pain, and arthritis; she noted Claimant had plans for surgical correction on October 26. (Id.)

Based on her examination, Dr. Wasylyk completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. at 473-479.) She indicated Claimant could do the lifting and carrying requirements of light work but was significantly limited in his ability to sit, stand, or walk at one time without interruption. (Tr. at 473-474.) Dr. Wasylyk stated Claimant would be limited to frequent operation of foot controls and could never perform postural activities, including climbing or balancing, or work at unprotected heights. (Tr. at 475-476.)

**The Administrative Hearing August 31, 2015**

Judith Brendemuehl, Medical Expert ("ME") Testimony:

At the first hearing, the ME testified that the current record did not prove Claimant's impairments medically met or equaled a listing. (Tr. at 31.) She explained that Claimant complained of chest pain and had been a heavy smoker for about 25 years, though an EKG and pulmonary function test were normal. (Tr. at 31-32.) He was permitted to return to work the beginning of September. (Tr. at 32.)

The ME testified Claimant began to complain of low back pain radiating to his right leg in November 2014. (Id.) He was evaluated and observed to have a normal gait and negative straight leg raising tests, but some decreased sensation in both feet. (Id.) The ME explained that an MRI revealed moderate canal stenosis and lateral recess stenosis of the L4-5 level, and though surgery was discussed as a treatment option, the ME had no follow up records to review; she recommended

obtaining updated medical records, a new MRI, and a physical consultative examination for proper evaluation. (Id.)

In response from questioning by Claimant's counsel, the ME testified that straight leg raising at 80 degrees "is really not a positive straight leg raise." (Tr. at 33.) Because Claimant had a normal gait and that his musculoskeletal examination was normal in November 2014, the ME emphasized the importance of a follow up MRI. (Id.)

**The Administrative Hearing January 4, 2016**

Claimant Testimony:

Claimant testified that he had been scheduled for back surgery but that his doctor postponed the surgery and had not rescheduled it. (Tr. at 40.) He stated he did not understand the procedure but was willing to have the surgery. (Tr. at 44.) He described snapping and intermittent burning and icing sensations in his right calf. (Tr. at 40-41.) Claimant stated his left leg was beginning to have the same symptoms. (Tr. at 41.)

Regarding his pain, Claimant stated that he had good days and bad days. (Tr. at 40.) He indicated he had five to six bad days per month, and on a bad day, his pain level was a 10, and he could not walk. (Tr. at 40-41.) He stated that although he was in constant pain, on a good day, his pain level was about a 5, and he could walk around the yard with his dog. (Tr. at 41-42.) Claimant testified he tried to avoid doctors and the emergency room because "all they're going to do is shoot me up with drugs and give me more pills and I really don't like it." (Tr. at 41.) Instead, he attempted to relieve his pain symptoms with his prescribed medications, taking a warm shower, and lying down. (Tr. at 42.)

Claimant testified that he had difficulty with coughing interfering with his sleep. (Id.) He

described using an inhaler and a machine every four hours. (Tr. at 43.)

Claimant explained that he was having a "medium" pain day when he was evaluated by the consultative examiner. (Id.) He indicated he spent 30 minutes with the examiner and experienced pain immediately after the examination. (Id.) He stated he was unable to complete some of the tests and was shaking. (Tr. at 43-44.)

Claimant stated he was married and lived with his wife. (Tr. at 44.) There were no minor children in the house. (Id.) He stated he spent his day looking at the news on the computer and twice a week would walk with his wife's dog around the yard. (Tr. at 45.) He confirmed he did not like to drive because of the symptoms in his leg. (Id.)

Judith Brendemuehl, Medical Expert ("ME") Testimony:

The ME summarized the evidence from Dr. Rida Mazagri, which included Claimant's mildly limping gait on the right, positive straight leg raise testing, and an MRI revealing foraminal stenosis at L4-5. (Tr. at 45-46.) She indicated a posterior lumbar interbody fusion was recommended. (Tr. at 46.) She stated the consultative examination gave a mild range of motion abnormalities. (Id.)

When questioned about Claimant's RFC, the ME testified that Claimant would have difficulty sustaining ambulation for six out of eight hours a day and should be reduced to the sedentary exertional level. (Id.) She further stated Claimant should not climb ladders, ropes, and scaffolds, kneel, or crawl, but occasionally could perform all other postural activities. (Tr. at 47.) Additionally, she stated Claimant should avoid all heights and hazardous machinery and should have only occasional exposure to heat, cold, vibration, and pulmonary irritants. (Id.)

In response to questioning by Claimant's counsel, the ME clarified that the record included

objective evidence of listhesis and foraminal stenosis as the underlying causes of Claimant's pain complaints (Tr. at 48.)

Olen Dodd, Vocational Expert ("VE") Testimony:

The VE categorized Claimant's past work as a janitor (DOT No. 381.687-018) at the unskilled, medium exertional level. (Tr. at 49.) The VE then testified that a hypothetical individual with Claimant's vocational profile and controlling RFC could perform representative jobs at the sedentary level. (Tr. at 50.) The VE confirmed that each of these jobs would afford a sit/stand option. (Id.) However, the VE indicated that an individual who would miss work five to six times per month or required additional breaks totaling 25 percent of the workday would be unable to maintain employment. (Tr. at 51.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

    <u>Listing 1.04A Step Three Analysis Post *Radford v. Colvin*</u>:

    The issue raised on appeal concerns the ALJ's analysis at step three when she determined that Claimant's back impairment failed to meet the criteria of Listing 1.04A, and whether her analysis complied with the Fourth Circuit's holding in <u>Radford v. Colvin</u>, 734 F.3d 288 (4th Cir. 2013). In <u>Radford</u>, the Fourth Circuit held that Listing 1.04A requires a claimant to show only that each of the symptoms are present, that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months, but a claimant "need not show that each symptom was present at precisely the same time – i.e., simultaneously . . . [n]or . . . that the symptoms were present in the claimant in close proximity." <u>Id</u>. at 294.

    Paragraph A of Listing or Section 1.04 concerns disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, that results in compromise of a nerve root (including the cauda equina) or the spinal cord, with:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

    With respect to the criteria in Listing 1.04A, the ALJ found Claimant had no "evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required by the Listing."

(Tr. at 14.) Claimant contends that this finding conflicts with the ALJ's earlier finding at step two, that Claimant's degenerative disc disease and degenerative joint disease to be severe impairments based on the following: (1) medical records from July 26, 2013 through October 20, 2015 showed that Claimant was treated for diagnoses of bulging discs, low back pain, and *lumbar canal stenosis*; (2) a November 2014 MRI revealed Claimant's lumbar spine had "degenerative disc and facet disease with *central spinal stenosis* and *bilateral foraminal stenosis* at L3-4 and L4-5"; and (3) a September 2015 MRI revealed Claimant had "localized central and right sided L5-S1 disc herniation, L4-5 bulging disc and osteophyte formation, and L3-4 central disc protrusion with diffuse bulging disc and osteophyte formation." (Tr. at 13.) (emphasis added) Further, Claimant points out that the ALJ also recognized Dr. Wasylyk diagnosis of low back pain with bilateral lower extremity radiculopathy and positive straight leg test. (Id.)

The undersigned notes that the ALJ considered Claimant's testimony regarding his pain, his good days and bad days, and attempts to alleviate his pain, that she again referenced the medical evidence pertaining to Claimant's treatment for bulging disc, low back pain, and lumbar canal stenosis at subsequent steps in her overall analysis. (Tr. at 15-18.) The ALJ referenced additional medical records, one dated June 7, 2014 that

> described the claimant as walking with an antalgic gait. He had some tenderness of the lumbar spine and a positive straight leg raising on the right. Deep tendon reflexes were normal and motor strength was normal. The claimant had full range of motion of the hips. On October 14, 2014, the claimant's musculoskeletal examination was normal and he did not complain of back pain during this visit.

(Tr. at 16.) Less than a month later, however, the ALJ noted that on November 6, 2014, Claimant went to the emergency room for leg pain, and upon examination, he had "decreased range of motion with pain in the back." (Id.) Additionally, the ALJ noted that the CT scan of his lumbar

spine taken that same day indicated a "possible central disc protrusion at L4-5, a possible central disc protrusion or herniation at L3-4, and mild bulging disc at L-S1." (Id.) A subsequent MRI confirmed Claimant's back and leg pain "was possibly related to his multi-level degenerative disc disease of the lumbar spine as well as canal stenosis and synovial cyst at L4-L5 level." (Id.)

The ALJ further considered the medical evidence that Claimant continued to be treated for his spine issues showing that he continued to experience pain and tenderness, though in December 2014, his neurological examination was normal, and he had no sensory abnormalities, no dysfunction on motor examination, no coordination abnormalities, and normal reflexes. (Id.) Through February 2015, Claimant was doing well on his medications, but by April 2015, his medications had to be changed. (Id.)

Next, the ALJ reviewed Claimant's treatment notes from his neurologist, Dr. Mazagri, who in April 2015, noted Claimant had a normal gait, normal reflexes, negative straight leg raising, but some decreased sensation in both feet. (Id.) It was noted further that Dr. Mazagri found Claimant to be "neurologically stable" and continued to treat with pain medication; a flexion extension x-ray in May 2015 showed no evidence of instability, though surgery was an option as Claimant's symptoms persisted. (Tr. at 16-17.) Indeed, surgery was recommended by September 2015 because Dr. Mazagri continued to observe that Claimant had a mild limp favoring the right, a positive straight leg raising at 80 degrees, despite demonstrating good lower extremity strength and intact sensation. (Tr. at 17.) Though Claimant was scheduled for surgery, for reasons unknown, it was cancelled. (Id.) Finally, the ALJ reviewed the examination report provided by Dr. Wasylyk, *supra*. (Id.)

In her assessment of the evidence of record, the ALJ found that Claimant had "generally

normal physical examinations" though he had some mild to moderate abnormalities, which restricted him to sedentary exertion with the aforementioned limitations. (Id.) This determination finds support in Dr. Brendemuehl's testimony, who opined that Claimant would be limited to sedentary exertion. (Tr. at 18.)

It is clear that the ALJ thoroughly reviewed evidence of record, including the opinion evidence provided through Dr. Brendemuehl's testimonies, which addressed the conflicting evidence with regard to Listing 1.04A findings. The undersigned agrees with the Commissioner that remand is unwarranted in this case, unlike the matters presented in Radford and Fox v. Colvin, 632 F. App'x 750 (4th Cir. 2015), because the ALJ herein did provide an evaluation of the medical records in her decision, the *appearance* of conflict in her step two and three findings notwithstanding. Indeed, the ALJ acknowledged Claimant's severe impairments were indicated by spinal canal stenosis, but the evidence did not show spinal stenosis "as required by the Listing" at step three. (Tr. at 13-14.)

Importantly, the ALJ noted numerous references in the medical record that not all criteria "as required by the Listing" were present to justify a finding that his impairment rose to the severity of the Listing: (1) on August 26, 2013, PA-C Ricottilli reported Claimant could return to work (Tr. at 15.); (2) on June 7, 2014, a treatment note reported his deep tendon reflexes were normal and motor strength was normal (Tr. at 16.); (3) on December 16, 2014, a neurological examination was normal, and Claimant had no sensory abnormalities, no dysfunction on motor examination, no coordination abnormalities, and normal reflexes (Id.); (4) on April 8, 2015, Dr. Mazagri reported Claimant had a normal gait with reasonable toe and heel walking, normal reflexes, negative straight leg raising, and was neurologically stable (Id.); (5) on May 13, 2015, Dr. Mazagri reported

x-rays indicated no evidence of instability (Id.); (6) on September 9, 2015, Dr. Mazagri again noted Claimant had good strength of lower extremities and intact sensation (Tr. at 17.); (7) on September 29, 2015, Dr. Wasylyk reported Claimant's cervical and lumbar spinal movements "were preserved", sitting straight leg raising test was negative, motor strength of lower extremity was "-5/5"[3], and no evidence of atrophy (Id.); and (8) on October 20, 2015, a treatment note indicated Claimant's musculoskeletal examination was normal. (Id.)

In short, the ALJ properly discussed the evidence that failed to meet Listing 1.04A requirements, specifically, the absence of "motor loss accompanied by sensory or reflex loss." "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zelbey, 493 U.S. 521, 530 (1990). Therefore, the ALJ's step two and step three findings are not in conflict, as they required different evidence in the sequential evaluation process. Further, with regard to the conflicting evidence, the ALJ complied with her duty to reconcile those conflicts, with assistance of the testifying medical expert, ultimately determining that Claimant's spinal disorder failed to meet the criteria under Listing 1.04A. Hays v. Sullivan, 907 F.2d at 1456. Finally, it is important to recognize that the record contains no opinion that Claimant was disabled, let alone that his impairment medically equaled or met the criteria under Listing 1.04A. Accordingly, the undersigned **FINDS** that the ALJ's determination that Claimant's severe impairments of degenerative disc disease and degenerative joint disease did not rise to Listing 1.04A severity is supported by the substantial evidence.

**Recommendations for Disposition**

---

[3] In the range of motion form, Dr. Wasylyk rated Claimant's lower extremity motor strength was normal bilaterally, 5/5. (Tr. at 472.)

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (Document No. 13.), **GRANT** the Defendant's request to affirm the decision below (Document No. 14.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: December 5, 2017.

Omar J. Aboulhosn
United States Magistrate Judge